The last case on for argument today is United States v. Agra. Sorry, Agra telly. Morning. Just just a minute, Mr. Hayes. Well, they're clearing also apologies for the late notice on the argument. It was my mistake when I was setting the calendar. I had left a blank. And so the calendar team assumed it was on submission. We found that you had actually both requested to argue. So thank you on shorter notice for coming in. Thank you. Thank you both. Yes. Good morning. Good morning. May it please the court. Tracy Hayes on behalf of Christopher Agra telly the appellant. When considering the entire context of Mr. Agra telly's sentence, that is the 78 month state term on discharge state term of imprisonment. That ran consecutively or that runs consecutively with the 24 month federal sentence. And the eight years of supervised release term. This sentence is excessive, unreasonable and greater than necessary. Specifically, when we're looking at the Alvarado, U.S. v. Alvarado, that's a fifth circuit decision and U.S. v. Culture, that's a third circuit decision. They both indicate that the district court should consider and be cautioned when sentencing. And considering specific facts and circumstances when imposing supervised release. So that is not to impose supervised release blindly, but to consider that defendant's specific facts and circumstances. Also, and moreover, before the court would even impose an upward departure of supervised release. So here that was not done. Mr. Agra telly laid out in open court, much less in his sentencing submissions, specific facts and specific reasons about what got him to that point in his life. What got him to that point before the court. His background in a lot of ways that was out of his control. And in a lot of ways that informed his, frankly, criminality. And in considering that, the court had other ways and other means of fashioning a sentence that could have been not as excessive. That could have been fair and reasonable. And that could have been just, if you will. And that was not done here. Mr. Agra telly, he's currently, he's still serving his state sentence. He is your honor. So that was a 78 month sentence. And he has under the present sentence, 24 months on top of that. That's correct. That's correct. And you're arguing that that's, we should considering all the factors and our own jurisprudence determined that to be substantively unreasonable. Yes, your honor. As well as procedurally unreasonable. Yes, your honor. Sorry. Take me through again. If you would. Why is it procedurally unreasonable? What was the error? With respect to the sentence of imprisonment. Absolutely. So I think we may be having a different discussion about the supervised release term. So not with respect to the imprisonment component of the sentence. But more specifically as it is with the supervised release component of the sentence. All right. So when you say procedurally unreasonable, that's the only thing you're referring to? Yes, your honor. Okay. Thank you. And your honor, we understand there was a waiver. We wouldn't be here if Mr. Agritelli was sentenced to the 24 to 30 months within that range and the five years of supervised release. We couldn't be here. And it would have been dismissed and this court would have never seen us today. But that's not the case. The government pointed out in its papers, in its reply papers, that Mr. Agritelli was given notice leading up to sentencing. But he wasn't. I can't speak for the court, neither can the government. We do not know what the court would impose, which is what I advise Mr. Agritelli. It could be five years. It could be life. It could be 20 years of supervision. I can't speak for the court, but I can say to you that if the court were to consider sentencing you beyond the five years, six years, five and a half years, ten years, that we would receive notice. And so that's where that procedurally, we did not receive that notice. And so we were unable to prepare for that. Wasn't everybody that participated in this sentencing, though, under the impression that the range was five years to life? So I don't quite understand the no notice argument. You were coming to court thinking, I have to argue for a sentence of, if you're arguing for the minimum, five years. Your Honor, yes. When we proceeded to court, we were well aware that it was five years to life. We were also aware that his sentencing range was 24 to 30 months. Now, the court sentenced him to the bottom of that range, albeit consecutively, but to the bottom of that range. Had the court sentenced him to 35 months, five years, up to the maximum of the ten years, we would have received notice that at least the court were considering to upwardly depart. Here we're saying that we would do the same type of notice for that consideration of an upward departure of the supervisory lease portion. So you're saying that the guideline for the supervisory lease portion was five years? Yes, Your Honor. Not five years to life? Yes, Your Honor. And so the court didn't consider, as part of its determination, that the guideline was actually only the statutory minimum of five years. Is that it? That's it, Your Honor. Respectfully, not until the end, not until the sentence was imposed. And we argued earlier, when I touched on the unreasonable, the substantive reasonableness of the sentence, that that portion of the sentence, the prison portion of the sentence, was imposed mainly because of Mr. Agritelli's possibility that he might recidivate. Possibility, or even his past. So given his past criminality, his past record, the possibility that he could, as the court indicated, injure, hurt, or abuse more children in the future. That's why that portion was imposed. We addressed that. We were ready and prepared to address that, and we did so in our sentencing filings. We did so when we appeared before the court. But in terms of the supervisory lease portion, we didn't address it because we realized that it would be five years. At least that's what we realized walking into court. The PSR was not accurate with regard to supervisory lease, that the guideline is five years, not five years to life. No, Your Honor. I don't want to mislead the court. We knew, the government knew, as well as the U.S. Probation Office, it was indicated in the PSR, the judge knew, that my client faced five years to life. I guess the concern here is that the waiver was set at five years. We're thinking that if the waiver is set at five years, that that's where it sort of starts and stops. Not to say that the court cannot sentence him beyond the five years, but more that the court should have given us some type of notice. You're saying it was an upward departure on the part of the court, and the court needed to have an understanding that it was departing upwardly and to state the reasons why. Yes, Your Honor. I think I'm following up on restating or trying to restate what Judge Gariff has just said. It's a single point that is the guideline reference. The court thought it had a range from that single point on up to life.  Now that you know that it is a single point, please consider this. Give your client a hearing if it wants to go and reimpose what it's— Yes, Your Honor. Yes, absolutely. The last point I want to make about that is the representations the district court made in terms of the imprisonment portion of the sentence, they were all there. We understood why he was advised, why the court sought that sentence 24 months consecutive. The supervised release portion, that was not understood. There was nothing made on the record in regard to the supervised release portion. Thank you, Your Honor. Thank you, Mr. Hayes. Two minutes for rebuttal. Ms. Slater. Thank you. Good morning. It's still morning. My name is Deborah Slater, assistant United States attorney in the District of Connecticut, and I'm representing the appellee. The supervised release portion of the sentence of eight years was substantively and procedurally reasonable. The supervised release term imposed was substantively reasonable because it was sufficient but not greater than necessary to protect the public, and Judge Thompson was concerned particularly about child victims, having had a lot of experience in that area. He was concerned about the defendant's likelihood of recidivism, and he was also concerned about assisting Mr. Agritelli in his ability to get his life in order. Contrary to Mr. Hayes' assertion, the court went over that in great detail. There are numerous sections of the record that are outlined that speak to the issue of the court carefully considering all of Mr. Agritelli's issue, and contrary to what the appellant has argued, the issues concerning supervised release are far different than the issues with regard to a custodial sentence. We're talking about the ability to reenter the community and the ability to comply with laws once you reenter the community. Mr. Agritelli had seven prior convictions, two involving violent felonies, three probation violations, eight disciplinary actions while he was in custody, all giving the district court judge ample grounds to believe that a lengthier period of supervised release was appropriate. When I say lengthier, Your Honors, we are not talking about a lifetime period of supervision. We are talking about an increase of three years beyond the mandatory minimum. Now— Can you address the procedural reasonableness argument? Absolutely. Yes, the government will certainly agree with the fact that the parties and the court were under the impression that the guideline presented a range of mandatory five years to life, and that is incorrect. I would note that the appellant didn't realize that in his brief. The government noticed that and certainly owned up to it in the brief. But when he indicates that there's a violation of Rule 32H because there was no notice of a departure, that's where the government clearly disagrees. Rule 32H says before the court may depart from the applicable sentencing guideline range on a ground not identified for departure in the pre-sentence report or in the party's pre-hearing submission. And I'll end there, because the pre-sentence report, in its comments at the end, indicated that it was appropriate for this defendant to have greater than a mandatory five years of supervision, and the government, in its sentencing memo, also indicated that it was appropriate to have a greater period of supervision in this case. So Rule 32H was not violated. Mr. Agritelli—excuse me. Sorry. Finish. No, I was just going to say Mr. Agritelli had notice. But shouldn't the district court have had the correct information as to the guideline for supervised release before reaching any conclusion about an upward departure on supervised release, which is what the court did in effect? Is that something that the court should have consideration of when deciding the question? Knowing that, the court might still impose an eight-year term of supervised release, but it would do so as an upward departure. And isn't it important to have the accurate information before the district court so the district court can properly sentence the defendant on the question of supervised release? Certainly, Your Honor. I would not disagree with that. However, in this case, it made no difference. The defendant is not able— How do you know that what would be in the mind of the judge when told that the guideline range set by the Sentencing Commission is five years, and that you can go all the way up to life, but this is what the Sentencing Commission recommends as the guideline? Yes, Your Honor. Perhaps it would have been helpful— I mean, it certainly would have been helpful if the judge were to have known that, but the judge's comments, which were extensive, clearly indicated his concern about Mr. Agritelli's inability to comport with society's rules and regulations. And so there's no reason to believe that the period of supervised release imposed would have been any different if the judge had known that the guidelines recommended the five years as opposed to five years to life. We do not believe that there— The argument is that under plain error review, this would—we would have come— there's no showing here that the result prejudiced the defendant in any way. You took the word right out of my mouth, Your Honor. I was just about to say that the government believes that there is no showing of plain error in this case that impacted the defendant's substantive rights or impaired the integrity or fairness of the proceedings. Therefore, the government respectfully requests that this court affirm the judgment of this court in all respects. So if Judge Thompson had started out— the government's position is if Judge Thompson had started out knowing exactly what the guideline range was, he could still have, in his head, as he's sitting contemplating what sentence, the full sentence to impose, say, well, I think five's not enough, so I'm going to depart upward and impose eight years of supervised release. Yes, Your Honor. Does he have to give any notice that he's going to do that so at least the defendant can argue why that should not be done? Well, as I previously indicated, Your Honor, the government believes that there was notice. There was notice in the pre-sentence report, and there was notice in the government's— As five years to life, and so there was— The notice provided was that more than the mandatory minimum was appropriate in this case. So there was notice despite the fact that the interpretation of the guideline was wrong. And everybody operated under the assumption, or at least until we got after the fact, that there was five years to life. So what he was given as a term of supervised release was, before he went into sentencing, within the range that everybody thought it was, five to life. That is correct. He was given a sentence within the range that the parties and the court— That everybody thought was the range applicable, even though it turned out not to be a range at all. Correct. But again, the government's argument is that there's every indication the court would have imposed the same term of supervised release, that the defendant was given notice, that through the pre-sentence report and the government's brief, that we both intended to ask for more than the five years, and that there is no showing of plain error in this case. Thank you, Ms. Slater. Mr. Hayes, would you—I'm sure you're going to get to it, but maybe start off with the last point we were discussing. Thank you, Your Honor. No notice was given. So when we talk about the five years to life that was indicated in the PSR, in the plea, and in other places, that's the maximum penalties. That's not the notice. The notice that is required and that we were asking for, and I think that's due here, Your Honor, is the court indicating that it is going to consider, or is considering an upward departure. That's the notice that's required here, not five years to life, because that's the maximum penalty. Mr. Agritelli? Respectfully, at least in my view, five years to life is the range within which your client understood he could be sentenced to serve as a term of supervised relief. So he knew it could be as low as five, but he knew he could be on supervised relief for the rest of his life. Yes, Your Honor. Am I wrong in understanding what your client should have understood? No, he did understand that. He also understood that he was facing up to ten years, whether it be consecutive or whether it be concurrent. Right. So— Let's focus on the supervised relief, which I think is where the mistake, mutual mistake, was made. Absolutely, Your Honor. I think one thing that we looked at and that Mr. Agritelli focused on in terms of the supervised relief was not only the indication of five years. He knew that that's the range in most of these cases of similarly situated defendants at the time or offenders at the time. He also knew that there was an appellate waiver of five years that said that if the court would sentence him to more than five years of supervised release, that he could appeal. So that gave him some indication that, okay, well, it's five years. Yes, the judge could give me ten years, twelve years, but there was no indication to him specifically from the court regarding what would be Rule 32. So the way everybody was thinking about it at the time, I think this is the government's position, was there was no notice needed to be given because he knew, he knew in quotes, that he was facing up to a lifetime of supervised release. And he got, I hope for his sake, he got significantly less than that because he only got eight years. Right. Your Honor, I still believe that was an upward departure from the five years that he expected to receive. And I think I also, I think the court wanted me to respond to the notice, and I'm sorry, there was something else. I'm sorry, Your Honor. I don't remember either. Plain error. Plain error. Oh, thank you. So, Your Honor, if I may. Yes, this does meet that standard. There was error here, five years instead of eight years. It was plain. And there also, what I think it touched on was, I believe the government indicated that the court gave every indication that it would not have sentenced Mr. Agritelli any differently had it known that this would have been considered an upward departure. But that's nowhere in the record. So, what's in the record is regarding specifically the custody or custodial portion. What I believe the fourth prong of the plain error standard, if all three conditions are met, then I believe the court said this did not, I'm sorry, the government said this did not seriously affect the fairness, integrity, or public reputation of the judicial proceedings. It did. And it does. And so, when I advise my client that this is considered an upward departure, that, again, I can't speak for the court. Yes, you're looking at up to life. But we have every indication that the court would sentence you to five years, whether you get a concurrent sentence of imprisonment or a consecutive sentence of imprisonment. I thought the probation department was recommending a sentence above five years for supervised release. Your Honor, if that was the case, I don't have any indication of that. I don't believe that we receive that, the recommendation from the U.S. Probation Office. Ms. Slater suggests it's in the PSR. Please, Your Honor. If I may? Sure. Just so we have that. Thank you. Paragraph 98, page 21, under the section captioned Part H, Probation Officer's Evaluation. In that particular paragraph, it says it is recommended that the sentence include a significant term of supervision in the community to ensure that Mr. Agritelli engages in appropriate activities in the future, specifically treatment for substance and mental health issues, and includes the additional conditions as recommended above. Sorry, just paragraph 98? 98. 98. 98. 98. And that's on page? Page 21. 21, okay, thank you. It is set at a specific number of years? It does not in here, Your Honor. It's my understanding that a more specific recommendation is provided confidentially to the court, at least in the District of Connecticut. The parties do not receive that. And that's what I was referring to, Your Honor. A significant sentence of supervisory release is five years. So also considering when we're looking at, and this is the last part, when we're looking at the consecutive sentence, the 24 months consecutive to the 78 months of the undischarged term of imprisonment, five years is excessive and is that significant sentence. Thank you, Mr. Hayes. Thank you. Thank you, Ms. Slater. We'll reserve decision. The last case on the calendar today is Marin Marin v. Lynch, which is on submission. And I will ask the clerk, once again, please, to adjourn court. Thank you.